**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(<u>Baltimore Division</u>)**

| | |
|---|---|
| In re:<br><br>Roman Catholic Archbishop of Baltimore,<br><br>    Debtor. | Case No. 23-16969-MMH<br>(Chapter 11) |
| The Official Committee of Unsecured Creditors,<br><br>v.<br><br>Roman Catholic Archbishop of Baltimore,<br><br>    Defendant. | Adv. Proc. No._____-MMH |

**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF
REGARDING SEEK THE CITY TO COME**

The Official Committee of Unsecured Creditors appointed in the above-captioned chapter 11 case (the "Committee"), as and for its Complaint against the debtor and debtor in possession, the Roman Catholic Archbishop of Baltimore (the "Debtor"), states and alleges as follows:

**<u>PARTIES</u>**

1.      Pursuant to 11 U.S.C. § 1102, the Office of the United States Trustee appointed the Committee on October 11, 2023 in the Debtor's chapter 11 case, Case No. 23-16969 (Bankr. D. Md.).

2.      The Debtor is a corporation sole organized under the laws of the State of Maryland.

1

**JURISDICTION**

3.      Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and Standing Order 2012-05 from the United States District Court for the District of Maryland.

4.      Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 7012-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Maryland (the "Local Rules"), the Committee consents to the entry of a final judgment or order with respect to the Complaint if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

5.      Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**OVERVIEW**

6.      Through this Complaint, the Committee, which is comprised of seven (7) survivors of child sexual abuse, seeks to compel the public disclosure of details relating to the Archdiocese's "Seek the City to Come" program and to ensure that all related actions taken, or to be taken, by the Roman Catholic Archbishop of Baltimore are properly noticed and approved in a manner consistent with applicable bankruptcy laws and rules. According to public records and statements concerning the Debtor's Seek the City to Come program, the Archbishop, among other things, has merged or intends to merge 61 parishes within the City of Baltimore into 30 parishes. The Committee believes that the actions undertaken by the Archbishop directly involve and/or materially impact both property of the Debtor's bankruptcy estate and the manner and means by which the Debtor will ultimately emerge from bankruptcy. As a result, the stakeholders of this bankruptcy, which include more than 900 survivors of child sexual abuse, must be apprised of the

Debtor's actions and have a meaningful opportunity to voice any related concerns or objections. The Committee believes that the Debtor's actions must also be subject to judicial oversight and approval given its voluntary choice to file for bankruptcy protection under chapter 11.

## **BACKGROUND**

7. On September 29, 2023, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Petition Date"). The Debtor is continuing in possession of its property and the management of its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

8. In the years preceding the Petition Date, the Maryland Office of the Attorney General conducted an investigation and issued a report in April 2023, stating over six hundred children were known at that time to have been abused by at least 156 priests, teachers, lay-employees, and/or other individuals employed, supervised, or otherwise associated with the Debtor.

9. The Maryland General Assembly enacted the Child Victims Act of 2023 (the "CVA"), which eliminated the statute of limitations in Maryland for survivors of childhood sexual assault (collectively, "Survivors") to bring claims against individuals and institutions who may be civilly liable for the atrocities perpetrated upon Survivors.

10. The Committee is comprised of seven Survivors with claims against the Debtor.

11. The vast majority of the Debtor's unsecured creditors, both in number and in the total value of claims, are Survivors.

12. The Debtor, among its other powers, exercises operational control over the Archdiocese of Baltimore.

13.     The Archdiocese of Baltimore is comprised of the Roman Catholic entities within the geographic territory of the City of Baltimore and Allegany, Anne Arundel, Baltimore, Carroll, Frederick, Garrett, Harford, Howard, and Washington Counties.

14.     On the Petition Date, there were one hundred fifty-three (153) parishes within the Archdiocese of Baltimore, in addition to many schools, non-profit entities, funds, and trusts.

15.     The Debtor has actual and constructive control over the governance of each parish.

16.     The governance and business operations of each parish is managed by a Board of Corporators.

17.     The Board of Corporators is composed of five members: (i) the Roman Catholic Archbishop of Baltimore, (ii) the Vicar General of the Archdiocese of Baltimore, (iii) the pastor or administrator of the parish, and (iv & v) two adult laymen living within the geographic territory of the parish.

18.     The officers of each parish are the Roman Catholic Archbishop of Baltimore, the Vicar General of the Archdiocese of Baltimore, and the pastor or administrator of the parish.

19.     The Vicar General is an employee of the Debtor.

20.     The pastor and/or administrator of each parish is an employee of the Debtor.

21.     The Archbishop of Baltimore, i.e. the Debtor, has sole authority to appoint and remove the Vicar General and the pastor and/or administrator of each parish.

22.     The Debtor obtains the majority of its revenue from levies it imposes on the Catholic entities within the Archdiocese of Baltimore.

23.     One of these levies is the cathedraticum, which is assessed against parishes based on component parts of each parish's revenues.

4

24.     The formula governing the amount of parishes' obligation to pay the cathedraticum is set by the Debtor.

25.     More than half of the Debtor's revenue comes from the cathedraticum each year.

26.     In addition to the cathedraticum, the Debtor taxes the purchase, lease, and/or sale of parish property, collecting 5% of the transaction price.

27.     The Debtor employs its parishes to manage the Debtor's annual appeal, which appeal constitutes additional substantial revenue for the Debtor.

28.     The Debtor also directly manages a substantial portion of each parish's administrative work as part of the Debtor's Central Services department.

29.     Central Services provides, among other things, human resource support, legal services, investment services, insurance administration, and other general administrative support and guidance to the parishes.

30.     On or around May 22, 2024, the Debtor publicized its "Seek the City to Come" initiative which contemplates the closure, realignment, and merging of 61 of the 153 existing parishes located in Baltimore City and its surrounding suburbs ("Seek the City").

31.     The Debtor contends that "Archbishop William E. Lori came to the decision to initiate the Seek the City after careful review and deliberate consideration of all the information gathered, including the considerable amount of feedback received in the weeks since the proposal of newly formed parishes was released … Although difficult, the realignment of the Church in Baltimore City holds great promise for a future guided by the Holy Spirit and our own compassion for one another." *See* https://www.archbalt.org/seek-the-city-newly-formed-parishes/ (last accessed Feb. 6, 2026); *see also* https://www.archbalt.org/seekthecity/.

32.     The Debtor began implementing Seek the City on December 1, 2024.

33.     As part of Seek the City, the Debtor instituted a number of policies that govern the disposition of assets and liabilities within the Archdiocese of Baltimore.

34.     The Debtor's recently adopted policy for the sale of property entitled *201.11 Temporary Limitations on the Use of Proceeds from the Sale of Property of Certain Parishes in the Urban Vicariate and Others*, states:

a.  The "Seek the City to Come" is a multi-year re-visioning and evangelization process beginning in FY2023 and not expected to end until approximately FY2025. The results of this process are expected to produce significant changes for the Roman Catholic parishes in Baltimore City and surrounding areas.

b.  Parishes effected by this temporary policy include: (from the Baltimore City) Our Lady of Pompeii, Sacred Heart of Jesus, St. Athanasius, St. Rose of Lima, Catholic Community of South Baltimore, St. Vincent de Paul, St. Leo, St Patrick (Broadway), Holy Rosary, St. Casimir, St. Wenceslaus, St. Francis Xavier, St. Ignatius, St. Ann, Basilica of the Assumption, St. Alphonsus Shrine, Corpus Christi, Immaculate Conception, St. Peter Claver, St. Gregory the Great, St. Pius V, St. Veronica, Transfiguration, St. Benedict, St. Joseph Monastery, St. William of York, St. Bernardine, St. Edward, St. Cecilia, New All Saints, St. Ambrose, St. Thomas Aquinas, Shrine of Sacred Hearth, Cathedral of Mary Our Queen, SS. Philip and James, Blessed Sacrament, St. Mary of the Assumption (Govans), St. Matthew, St . Rita/Sacred Heart of Mary, St. Dominic, St. Francis of Assisi, Shrine of the Little Flower, St. Anthony of Padua, Most Precious Blood (from West Baltimore County) Our Lady of Victory; St. Agnes; and Our Lady of the Angels (from North Baltimore County) St. Pius X, Immaculate Heart of Mary/St. Thomas More,(From East Baltimore County) St. Michael the Archangel /Church of the Annunciation /St. Clement Mary Hofbauer, Our Lady of Mount Carmel/ St. Clare, Our Lady of Hope, Dundalk /St. Luke, Edgemere.

c.  The implementation of the visions that results from these meetings will no doubt take several years and possibly decades to accomplish. This policy attempts to clarify best use of cash proceeds that are received during the course of this re-visioning process from the sale (canonical alienation) of parish property that in accordance with Canon 1291 is considered part of the "stable patrimony" of the parish.

d.  **Policy:** During the time this policy is in force the proceeds from the sale of parish property for the locations listed above will be held in a standard interest bearing IPLF deposit account for the parish. The IPLF records will establish a "Deposit in Trust" sub-account. Interest income shall be added

6

to the stable patrimony. These proceeds will remain the property of the parish but will be available to the parish for the following purposes:

i. To pay the fee for services per policy 201.8. A decision on the timing of when the payment is required will be made by the Archbishop of Baltimore when a full "vision" of the neighborhood for the parish is known.

ii. To pay the debts per policy 201.10 for insurance, cathedraticum and special assessments for the support of Catholic Schools. A decision on the timing of when payment is required will be made by the Archbishop of Baltimore when a full "vision" of the neighborhood for the parish is known. Unfunded pension obligation and IPLF loans will be paid when due.

iii. If the parish property that is sold provided rental income for parish operations, a portion of the proceeds as allowed by the Archbishop may be used for general parish operations. The amount may not exceed the annual rental income.

iv. If life safety issues exist within other operating structures owned by the parish, the sale proceeds may be used to cure the issues with the approval of the Archbishop.

v. Final resolution of the "Deposit in Trust" subaccount will be made by the Archbishop when a full "vision" of the neighborhood for the parish is known.

e. **Effective Date of 201.11:** The policy is effective fiscal year 2023 for a period of five years. The Archbishop must specifically renew this policy if it is to continue beyond fiscal year 2028.

35. In addition to the Seek the City policies, the Debtor has the power to implement a wide range of policies that affect the governance, finances, and disposition of property for each parish.

36. The Debtor actually and constructively decides whether a parish will continue to operate, will close, or will merge into another parish.

37. On information and belief, the Debtor's decision to close and merge parishes has had a mixed reaction among Catholics within the Archdiocese of Baltimore.

38.     Many parishioners have expressed their displeasure with the closing of their local parishes.

39.     On information and belief, at least one parish has appealed the effects of Seek the City to the Vatican.

40.     The Debtor's decision to institute its Seek the City policy, including selling real property, consolidating revenue streams, and incurring the resulting negative public relations response, is not an action taken by the Debtor in its ordinary course of business.

41.     The Debtor's decision to close and merge parishes will have a substantial impact on the Debtor's fiscal health and ability to perform its duties in this chapter 11 case and under any plan confirmed in this chapter 11 case.

42.     The Debtor has not sought approval from the United States Bankruptcy Court for the District of Maryland to undertake the extraordinary policies, sales, and actions associated with Seek the City.

43.     Starting on June 13, 2024, the Committee made several written requests that the Debtor seek approval and oversight from the Bankruptcy Court for the Seek the City initiative.

44.     Despite the Committee's insistence, the Debtor has refused to provide notice and a hearing, and thus seek approval from the Bankruptcy Court, with regard to the Seek the City initiative.

45.     On April 1, 2025, the Debtor and Committee entered into a stipulation regarding Seek the City, *see* Dkt. 1031, Bky No. 23-16969 (the "Stipulation").

46.     As part of the Stipulation, the Committee did not waive but instead specifically reserved all its rights to take any civil law action to challenge Seek the City or any transactions contemplated by Seek the City.

47. The Stipulation also tolled any deadlines for the Committee to make a civil law challenge to Seek the City or any of the transactions contemplated by Seek the City.

48. On October 3, 2025, the Debtor filed a plan of reorganization, which among other things, seeks third-party releases and injunctions benefiting its affiliated entities, including its parishes, from claims filed by Survivors in the Debtor's chapter 11 case.

49. The Debtor has continued efforts to implement Seek the City, including authorizing the sale of several parcels of real property owned by closed or merged parishes.

### COUNT I - Declaratory Judgment
#### (Section 363(b) Applies to Seek the City)

50. The Committee incorporates and restates all the preceding paragraphs by reference as if fully set forth herein.

51. This Court may issue a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, which provides that, "[i]n a case of actual controversy within its jurisdiction … any court of the United States … may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *BnP Ventures, LLC v. G-Force Sportfishing, Inc.,* 499 F.Supp.3d 175, 179 (D. Md. 2020) (citing 28 U.S.C. § 2201).

52. By voluntarily seeking bankruptcy protection, the Debtor submitted itself to all of the applicable requirements of the Bankruptcy Code, 11 U.S.C. § 101 et seq.

53. Section 363(b) of the Bankruptcy Code requires the Debtor to obtain permission from the Bankruptcy Court, after notice and a hearing, if it intends to use, sell, or lease, other than in the ordinary course of business, property of its estate.

54. The revenues derived from each parish are property of the Debtor's estate.

55.    The Debtor's close relationship with each parish, including that the Debtor exercises de facto control over each parish and obtains the majority of its revenue from the parishes, means that the Debtor's decisions about parish governance and finances has a direct and substantial impact on the size and stability of the Debtor's bankruptcy estate.

56.    The decision to close a subsidiary business or affiliate is the use of estate property under the definition of Section 363 of the Bankruptcy Code.

57.    Debtors in other jurisdictions have sought approval from bankruptcy courts when they close affiliated non-profit entities. *See Debtors' Motion for Entry of an Order, Pursuant to Section 363(b) of the Bankruptcy Code, Authorizing Boy Scouts of America to Dissolve Inactive Non-Debtor Subsidiaries, NewWorld19, LLC and Texas BSA, LLC*; Boy Scouts of America and Delaware BSA, LLC, Bky. No. 20-10343 at Dkt. 1022 (Bankr. D. Del. Jul. 16, 2020).

58.    Seek the City could have a deleterious effect on the Debtor's revenues, either directly from the closure and mergers of its revenue centers or indirectly by upsetting parishioners and decreasing future revenues.

59.    Unsecured creditors have a direct interest in the unencumbered assets of the Debtor and would be injured if the Debtor takes actions that diminish or put at risk the various parish revenue streams payable to the Debtor.

60.    The Debtor's pursuit of its Seek the City initiatives, including the closure of parishes and as otherwise described herein, without Bankruptcy Court approval violates Section 363(b) of the Bankruptcy Code.

61.    The Debtor contends that its pursuit of its Seek the City initiatives without notice and a hearing and Bankruptcy Court approval does not violate Section 363(b) of the Bankruptcy Code.

62.     There is an actual, real, current, and justiciable controversy concerning whether or not the Debtor must provide notice and a hearing and obtain Bankruptcy Court approval to implement Seek the City.

63.     The controversy is ripe as, among other reasons, the Debtor continues to authorize the closure and merging of parishes, sale of parish real property, and disposition of proceeds of such sales, without authorization from the Bankruptcy Court.

64.     The Committee seeks a declaratory judgment to enforce the Bankruptcy Code and preserve the value of the Debtor's estate.

65.     Accordingly, pursuant to 28 U.S.C. § 2201, Fed. R. Civ. P. 57, and Fed. R. Bankr. P. 7001(i), the Committee requests that the Court declare that the Debtor must provide notice and a hearing, and obtain court approval, under Bankruptcy Code Section 363(b) to implement its Seek the City initiatives; and grant such other relief as is just and equitable.

### COUNT II – Injunctive Relief
*(11 U.S.C. §§ 105(a) and 363(b); Fed. R. Bankr. P. 7001(g) and 7065; Fed. R. Civ. P. 65; 28 U.S.C. §§ 2201–2202)*

66.     The Committee incorporates and restates all the preceding paragraphs by reference as if fully set forth herein.

67.     This Court has authority to issue temporary, preliminary, and permanent injunctive relief to enforce the Bankruptcy Code and to prevent irreparable harm to the estate and its creditors, including pursuant to 11 U.S.C. § 105(a), 11 U.S.C. § 363(b), Fed. R. Bankr. P. 7065 (incorporating Fed. R. Civ. P. 65), and as "further necessary or proper relief" in aid of declaratory relief under 28 U.S.C. § 2202.

68.     The Debtor has implemented and continues to implement Seek the City, including authorizing and effectuating parish closures, realignments, and mergers; adopting and enforcing

11

policies governing the disposition of parish assets and liabilities; and authorizing sales of parish real property and the disposition and use of proceeds.

69.     The Debtor's implementation of Seek the City requires Bankruptcy Court approval after notice and a hearing pursuant to 11 U.S.C. § 363(b).

70.     The Debtor has not provided notice and a hearing and has not sought or obtained Bankruptcy Court approval under section 363(b) for Seek the City.

71.     The Debtor has refused the Committee's requests that the Debtor submit Seek the City to Bankruptcy Court approval and oversight.

72.     Unless restrained by this Court, the Debtor will continue to implement Seek the City without Bankruptcy Court authorization, including by authorizing additional parish closures and mergers, authorizing additional sales of parish real property, imposing or enforcing policies affecting the proceeds of such sales, and otherwise affecting the revenue streams derived from the parishes.

73.     The Debtor's continued pursuit of Seek the City without Bankruptcy Court approval threatens immediate and irreparable harm to the Debtor's estate, its unsecured creditors, and the Committee, including Survivors, because Seek the City has the potential to:

    a.  diminish or destabilize the Debtor's revenue streams derived from the parishes;

    b.  dissipate, transfer, or otherwise place beyond effective reach proceeds of parish asset dispositions;

    c.  create transactions with third parties that are difficult or impossible to unwind;

    d.  impair the Court's ability to provide effective relief after the fact; and/or

    e.  undermine the Bankruptcy Code's notice-and-hearing protections intended to safeguard the estate and creditors when a debtor acts outside the ordinary course.

74. The Committee lacks an adequate remedy at law because (i) the Debtor's deliberate violations of the Bankruptcy Code are intrinsically harmful to the bankruptcy process, (ii) Seek the City has diminished the Debtor's good will asset with its parishioners, which will continue to diminish if not enjoined, (iii) once Seek the City transactions are consummated extensive future litigation would be required to unwind transactions the Debtor authorizes, and (iv) the delay caused by future litigation to unwind Seek the City will needlessly prolong this chapter 11 case.

75. The requested injunction would preserve the status quo and require only that the Debtor comply with the Bankruptcy Code by seeking court approval after notice and a hearing before proceeding with extraordinary actions.

76. By contrast, absent injunctive relief, the estate and unsecured creditors face substantial, ongoing, and potentially irreversible harm.

77. The requested injunctive relief serves the public interest by protecting the integrity of the bankruptcy process, ensuring transparency and court oversight for extraordinary transactions, and preserving estate value for the benefit of all stakeholders.

78. Accordingly, the Committee requests entry of a permanent injunction enjoining the Debtor and all persons acting in concert with the Debtor from taking any further actions to implement Seek the City without prior Bankruptcy Court authorization under 11 U.S.C. § 363(b), including, without limitation:

a. closing, suppressing, merging, consolidating, or materially reorganizing any parish within the Archdiocese of Baltimore, to the extent such action results in a material change to assets, liabilities, or revenue streams, without first obtaining an order of this Court entered after notice and a hearing;

13

b. selling, leasing, transferring, encumbering, or otherwise disposing of any real property (or other material assets) of any parish that is the subject of Seek the City, or authorizing any such disposition, without first obtaining an order of this Court entered after notice and a hearing;

c. distributing, transferring, disbursing, pledging, commingling, or otherwise using proceeds of any Seek the City-related asset dispositions, without first obtaining an order of this Court entered after notice and a hearing;

d. implementing, enforcing, or amending any Seek the City-related policy that governs the disposition of assets or liabilities, or materially impacts revenues derived from parishes, without first obtaining an order of this Court entered after notice and a hearing; and/or

e. taking any action that would frustrate, moot, or impair this Court's ability to grant effective relief concerning Seek the City, including accelerating transactions or altering governance/financial arrangements in a manner designed to avoid Bankruptcy Court review.

79.     The Committee requests such other and further relief as the Court deems just and proper.

**WHEREFORE**, the Committee respectfully requests that the Court enter judgment in its favor and against the Debtor:

A.     DECLARING that the Debtor must provide notice and a hearing and obtain Bankruptcy Court approval under Section 363(b) of the Bankruptcy Code before taking any action to implement Seek the City;

B.    ENJOINING the Debtor and all persons acting in concert with the Debtor from taking any further actions to implement Seek the City without prior Bankruptcy Court authorization under 11 U.S.C. § 363(b), including, without limitation:

I.    closing, suppressing, merging, consolidating, or materially reorganizing any parish within the Archdiocese of Baltimore, to the extent such action results in a material change to assets, liabilities, or revenue streams, without first obtaining an order of this Court entered after notice and a hearing;

II.    selling, leasing, transferring, encumbering, or otherwise disposing of any real property (or other material assets) of any parish that is the subject of Seek the City, or authorizing any such disposition, without first obtaining an order of this Court entered after notice and a hearing;

III.    distributing, transferring, disbursing, pledging, commingling, or otherwise using proceeds of any Seek the City-related asset dispositions, without first obtaining an order of this Court entered after notice and a hearing;

IV.    implementing, enforcing, or amending any Seek the City-related policy that governs the disposition of assets or liabilities, or materially impacts revenues derived from parishes, without first obtaining an order of this Court entered after notice and a hearing; and/or

V.    taking any action that would frustrate, moot, or impair this Court's ability to grant effective relief concerning Seek the City, including accelerating transactions or altering governance/financial arrangements in a manner designed to avoid Bankruptcy Court review; and

C.    GRANTING such other and further relief as this Court deems just and proper.

15

Date: February 27, 2026                    Respectfully submitted,


                                           /s/ Richard L. Costella
                                           Alan M. Grochal, Fed. Bar No.: 01447
                                           Richard L. Costella, Fed. Bar No. 14095
                                           Tydings & Rosenberg LLP
                                           1 East Pratt Street, Suite 901
                                           Baltimore, Maryland 21202
                                           Tel: (410) 752-9772
                                           Fax: (410) 727-5460
                                           Email: rcostella@tydings.com
                                                  agrochal@tydings.com

                                           *Local Counsel to the Official Committee of
                                           Unsecured Creditors*

                                           -and-

                                           Robert T. Kugler (MN # 194116)
                                           Edwin H. Caldie (MN # 388930)
                                           Stinson LLP
                                           50 South Sixth Street, Suite 2600
                                           Minneapolis, MN 55402
                                           Main: 612-335-1500
                                           Facsimile:  612-335-1657
                                           Email: robert.kugler@stinson.com
                                                  ed.caldie@stinson.com

                                           *Counsel to the Official Committee of
                                           Unsecured Creditors*

16